UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT BRYAN LUKE

Petitioner,

vs. Case No. 3:18-cv-1443-J-39JBT

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

Respondents.

**ORDER**

**I. INTRODUCTION**

In his Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody (Petition) (Doc. 1), Petitioner, through counsel, is challenging his state court (Duval County) conviction for two counts of sexual battery. He also filed an Appendix (Doc. 2) and a Memorandum of Law in Support of Petition for Writ of Habeas Corpus Pursuant to Title 28 U.S.C. § 2254 (Memorandum) (Doc. 3). Respondents filed an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 11). Petitioner filed a Notice of Intent Not to File Reply (Doc. 13).[1]

[1] Respondents filed an Appendix to Answer to Petition for Writ of Habeas Corpus (Doc. 11). The Court will refer to the Exhibits in the Appendix as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the document

## II.   EVIDENTIARY HEARING

"In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017).  To be entitled to an evidentiary hearing, the petitioner must allege "facts that, if true, would entitle him to relief." Martin v. United States, No. 18-12643, 2020 WL 543343, at *5 (11th Cir. Feb. 4, 2020) (quoting Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)), petition for cert. filed, (U.S. July 2, 2020) (No. 20-30).  See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same).

If the allegations are contradicted by the record, patently frivolous, or based upon unsupported generalizations, the court is not required to conduct an evidentiary hearing.  Martin, 2020 WL 543343, at *5 (quotation and citation omitted).  In this case, the

---

will be referenced.  For the Petition, Response, and Memorandum, the Court references the page numbers assigned by the electronic filing system.

pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, the Court can "adequately assess [Petitioner's] claim without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief. Therefore, the Court finds Petitioner is not entitled to an evidentiary hearing. Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

## III. PETITION

Petitioner raises one ground in the Petition: "Mr. Luke received ineffective counsel when counsel failed to argue that testimony of the detective responsible for lost exculpatory evidence was necessary to Mr. Luke's right to present a defense[.]" Petition at 5. Petitioner alleges the lead detective from the 2007 investigation lost some evidence, recordings of a controlled phone call and the interrogation of Petitioner, that were exculpatory in nature leading to law enforcement and the state attorney dropping the case without arrest of Petitioner in 2007. At trial, when counsel attempted to ask about the lost evidence, the state objected, and the trial court sustained the objection. Petitioner complains that his counsel failed to make federal

constitutional arguments and provide case support for the defense's position, resulting in the trial court sustaining the objection, prohibiting the testimony, and preventing the jury from learning that Petitioner previously had exculpatory evidence.

## IV. HABEAS REVIEW

Petitioner claims he is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus and "prescribes a deferential framework for evaluating issues previously decided in state court[,]" Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted), limiting a federal court's authority to award habeas relief. See 28 U.S.C. § 2254; Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases"). Recently, in James v. Warden, Holman Correctional Facility, 957 F.3d 1184, 1190 (11th Cir. 2020) (quoting 28 U.S.C. § 2254(d)(1)-(2)), the Eleventh Circuit opined:

> [federal courts] are prohibited from granting a state prisoner's habeas corpus petition unless the relevant state court decision on the merits of the petitioner's claim 'was contrary to, or involved an unreasonable application of, clearly established Federal

> law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'

Pursuant to AEDPA, the following analysis must take place:

> A decision is "contrary to" clearly established federal law if the state court applied a rule that contradicts governing Supreme Court precedent, or if it reached a different conclusion than the Supreme Court did in a case involving materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision involves an "unreasonable application" of clearly established federal law if the court identifies the correct legal principle but applies it unreasonably to the facts before it. Id. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 167 L.Ed.2d 836 (2007).

James, 957 F.3d at 1190-91.

A state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary." Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)). This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law

and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014). Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference." Dallas v. Warden, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)). Thus, this Court may not supersede a trial court's determination simply because reasonable minds may disagree about the finding. Id. (quotation and citation omitted).

Finally, federal habeas courts must employ a "look through" presumption where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner raises one claim of ineffective assistance of counsel. This claim is "governed by the familiar two-part Strickland[v. Washington, 466 U.S. 668 (1984)] standard." Knight

v. Fla. Dep't of Corr., 958 F.3d 1035, 1038 (11th Cir. 2020). In order for Petitioner to prevail, he must satisfy the two-pronged Strickland test, requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). Id. (quotation and citation omitted). See Brewster v. Hetzel, 913 F.3d 1042, 1051-52 (11th Cir. 2019) (reviewing court may begin with either component).

## VI. GROUND ONE

> GROUND ONE: "Mr. Luke received ineffective counsel when counsel failed to argue that testimony of the detective responsible for lost exculpatory evidence was necessary to Mr. Luke's right to present a defense[.]"

Petition at 5.

Upon review of the state court record, Petitioner exhausted this claim of ineffective assistance of counsel by raising it in his Rule 3.850 motion. Ex. C1 at 137-206. In a rather convoluted and complex sentence, Petitioner, in ground two of his Rule 3.850 motion, claimed his trial counsel was ineffective for failure to argue for admission of testimony regarding lost evidence on the basis of Luke's right to present a defense under the Due Process Clause (Fifth Amendment) and the Sixth Amendment and for other

alleged failures. Ex. C1 at 144. Relevant to Petitioner's current claim of ineffective assistance of counsel, he provided the following argument to support his post-conviction claim:

> Defense counsel again tried to introduce in the cross-examination of the detective, David Humphrey, the fact of the controlled call and that the detective had lost it, but again the State objected and again the Court sustained the objection. Counsel was additionally ineffective for not responding to the State's objection that to prohibit the introduction of this evidence, particularly when the State had caused its loss, denied Luke his fundamental Constitutional right under the Due Process Clause and Sixth amendment Confrontation Clause to present his defense in violation of Crane v. Kentucky, 476 U.S. 683, 689-690, 106 S. Ct. 2142, 90 L.Ed.2d 636 (1986) and its progeny.

Ex. C1 at 148 (footnote omitted).

Curiously, Petitioner relied on cases that were founded on the Due Process Clause of the Fourteenth Amendment, not the Fifth Amendment, although Petitioner's stated his claim was founded upon the Fifth Amendment. Id. (citing Crane v. Kentucky, 476 U.S. 683 (1986); Chambers v. Miss., 410 U.S. 284 (1973)). The only legal argument presented in support of this particular contention of ineffectiveness is contained at the end of the Rule 3.850 Motion: "[a]lternatively and additionally, had counsel properly argued for admission of testimony regarding the lost exculpatory evidence the trial court would have admitted it (or if not admitted then

reversed on appeal) and had it been admitted this Court cannot now be confident the verdict would have been the same." Ex. C1 at 149-50.

The trial court, referencing the Strickland standard, Ex. C1 at 208-209, denied the post-conviction motion. Id. at 209-11, 214. In its order denying post-conviction relief, the court described Petitioner's allegations concerning the lost "exculpatory evidence," and drew its conclusions:

> The Defendant alleges the State lost what he describes as "exculpatory evidence," namely tapes of his 2007 interview with police in which he denied the allegations, and a 2007 controlled call with the victim in which the Defendant did not admit any wrongdoing. The Defendant makes no claim that the victim made any statements during the phone call that could have been used to impeach the victim at trial.
>
> The tapes would not constitute exculpatory evidence. Instead, they would be self-serving assertions of innocence which do not fall within any exception to the hearsay rule. A defendant's pre-trial exculpatory statements are inadmissible hearsay. Cotton v. State, 763 So. 2d 437, 439 (Fla. 4th DCA 2000). The Defendant cannot show prejudice resulting from the loss of these tapes because he gives no reason to believe they would have been admissible at trial or would have led to other admissible evidence. The loss of the tapes was not a "material impairment of his capacity to prepare a defense." Hope 89 So[.] 3d at 1137.[2] The Defendant has not shown

2 State v. Hope, 89 So. 3d 1132 (Fla. 1st DCA 2012).

> that there was some better or more complete argument his attorney could have made in filing the unsuccessful motion to dismiss. Relief on this ground is denied.

Ex. C1 at 211 (footnote omitted).

In its conclusion, the trial court found Petitioner had not demonstrated a basis for relief, denied the motion, and advised Petitioner he had thirty days to file an appeal. Id. at 214. Petitioner appealed, and the First District Court of Appeal (1st DCA), on November 19, 2018, per curiam affirmed. Ex. C4. The mandate issued on January 23, 2019. Ex. C7.

Petitioner, in his Memorandum, asserts that sub-claim (B) of ground two of the Rule 3.850 motion "went unaddressed." Memorandum at 11. Subsequently, Petitioner states that the trial court "denied the claim without specifically addressing it." Id. at 12. Finally, he contends the holding "was contrary to clearly established Federal law, as determined by the Supreme Court." Id.

Upon review, although the trial court did not provide detailed analysis and explanation in denying this portion of ground two of the Rule 3.850 motion, the court did find Petitioner had not demonstrated a basis for relief and denied the motion. Even though the court did not thoroughly explain its reasoning in denying this portion of ground two of the Rule 3.850 motion, after recognizing the Strickland standard of review for Petitioner's

claim of ineffective assistance of counsel, the court rejected the claim of ineffectiveness and denied the motion. The 1st DCA affirmed the decision of the trial court, even after Petitioner again raised this particular issue on appeal of the denial of the Rule 3.850 motion. See Ex. C2 at 13-16; Ex. C4.

The trial court properly utilized the Strickland two-pronged standard when addressing the claim of ineffective assistance of trial counsel. The 1st DCA affirmed the decision of the trial court denying relief. See Wilson. The state court's ruling is entitled to AEDPA deference as its decision is not inconsistent with United States Supreme Court precedent, and the adjudication of this claim is not contrary to or an unreasonable application of United States Supreme Court law or based on an unreasonable determination of the facts. Petitioner is not entitled to relief on his claim of ineffective assistance of counsel raised in ground one of the federal Petition.

Alternatively, to the extent the state court decision is not entitled to deference, the Court finds Petitioner is not entitled to habeas relief. An explanation follows.

The record shows Assistant Public Defender Todd Niemczyk, pre-trial, filed a Motion to Dismiss, identifying two items of evidence obtained in the 2007 case that had been lost or destroyed: a recorded, controlled phone call between Petitioner and the

victim, and a recorded interview between Petitioner and Detective David Humphrey. Ex. B1 at 26-27. Petitioner asserted the loss of these items resulted in a substantial violation of due process that materially prejudiced the defense. Id. at 26. Petitioner moved the trial court to dismiss the information, asserting he would be deprived of a fair trial. Id. at 27.

On May 2, 2012, the trial court heard argument on the motion. Id. at 135. The prosecutor explained, in 2007, the incident was investigated by the School Board and the Sheriff's Office, and the Sheriff's Office "exceptionally cleared the case, no warrant was sought, they consulted with the State Attorney's Office and closed the case out." Id. at 137. The prosecutor pointed out that during the controlled call and the police interview, both recorded, Petitioner denied the allegations. Id. The recordings were not placed in the property room but were left in the detective's file. Id. at 137-38. The prosecutor admitted that both recordings were exculpatory in nature, but the recordings were missing. Id. at 138. The prosecutor commented that the defense could argue that their destruction or absence may go to the weight or to the credibility of the state's case, but the loss of these recordings did not warrant the dismissal of the information. Id.

Mr. Niemczyk presented argument that material evidence had been misplaced, giving rise to Petitioner's due process claims.

Id. at 139. When asked for case law to support the defense's position, counsel referred to State v. Sobel, 363 So. 2d 324 (Fla. 1978) (finding a tape valueless and concluding there is no deprivation of due process where the contents of a lost or destroyed tape recording would not have been beneficial to the accused), and United States v. Agurs, 427 U.S. 97 (1976) (finding the prosecutor's failure to tender a record to the defense did not deprive the defendant of a fair trial as guaranteed by the Due Process Clause of the Fifth Amendment). Ex. B1 at 141. After hearing argument, the trial court denied the motion to dismiss. Id. at 144. Thereafter, the prosecutor commented that when a case is dropped, it is not a bar to using the evidence as Williams Rule evidence, and defense counsel agreed. Id. at 149.

At trial, in opening statement, co-counsel, Mr. Chase Sorenson, told the jury they would hear from the detective who investigated the case, and that based on his evaluation of the testimony of the victim and his mother, the detective did not think the allegations were accurate. Ex. B3 at 168. The state objected and the court sustained the objection. Id. Mr. Sorenson then stated that the detective would testify that he thought the evidence was not strong enough to pursue charges, and the prosecutors agreed with him. Id.

Later in the proceedings, the court inquired as to how the defense thought it would get opinions from a detective into evidence, and Mr. Niemczyk responded that Mr. Sorenson's opening statement to that effect was a misstatement. Id. at 231. The court warned that a proffer should be made prior to asking the detective questions about the controlled phone call. Id. at 232.

During the course of the trial, the state called Detective Humphrey. Id. at 278. On cross-examination, Mr. Niemczyk asked about the controlled phone call. Id. at 287. The state objected, stating it calls for hearsay without actually introducing the hearsay statements. Id. at 287-88. Mr. Niemczyk explained he was not attempting to elicit hearsay statements but rather focus on the investigation itself, the loss of the two items, and the fact that case was not prosecuted. Id. at 288. A proffer was conducted. Id. at 289-91. After hearing argument, the court sustained the state's objection. Id. at 291-93. Immediately thereafter, Mr. Niemczyk asked Detective Humphrey, "Detective, after a thorough investigation you did not make an arrest in this case, right?" Id. at 294. Detective Humphrey responded that was correct. Id. Thus, counsel was able to get the thrust of his point across to the jury despite the court's ruling.

In closing argument, Mr. Niemczyk argued the reason the state called D.I., the Williams Rule witness, was because the 2007 case

did not hold water and did not lead to an arrest. Ex. B4 at 475. Mr. Niemczyk continued in this vein:

> Jacksonville Sheriff's Office admits – you heard from Detective Humphrey from 2007 he didn't make an arrest. But the thing about the Jacksonville Sheriff's Office is they're objective parties in this. They are just trying to sort this thing out too. So[,] they do a thorough investigation. They don't make an arrest, but the important thing is the details that come across.

Id. at 477.

The Court is not convinced that had counsel argued for admission of the testimony regarding the lost evidence asserting a due process violation the trial court would have admitted it. Indeed, the record supports the opposite conclusion. The court had previously rejected Mr. Niemczyk's argument that Petitioner's due process rights were violated due to material evidence being misplaced. When defense counsel attempted to cross-examine Detective Humphrey on the subject, the state made a hearsay objection, which the trial court sustained after hearing the proffer and argument. Clearly, the court was not going to allow it. After that ruling, defense counsel did his best to show that after a thorough investigation by the police department, there was no arrest in 2007. Not only was Mr. Niemczyk able to obtain this admission from Detective Humphrey, defense counsel, in a strong closing argument, was able to emphasize his position that, in 2007,

the Jacksonville Sheriff's Office ably made the decision not to make an arrest after a thorough, professional investigation and assessment of the evidence supporting the victim's allegations.

The Court is not convinced defense counsel's performance fell below an objective standard of reasonableness. Furthermore, the representation by defense counsel was not so filled with serious errors that defense counsel was not functioning as counsel guaranteed by the Sixth Amendment. Upon due consideration, counsel's actions were well within the scope of permissible performance. The standard is reasonable performance, not perfection. Brewster, 913 F.3d at 1056 (citation omitted). As such, this claim is due to be denied.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED.**

2. This action is **DISMISSED WITH PREJUDICE.**

3. The **Clerk** shall enter judgment accordingly and close this case.

4. If Petitioner appeals the denial of his Petition for Writ of Habeas Corpus (Doc. 1), **the Court denies a certificate of**

**appealability.**[3] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of October, 2020.

BRIAN J. DAVIS
United States District Judge

sa 9/30
c:
Counsel of Record

[3] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.